**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By lcasalino at 3:58 pm, Aug 08, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 7 Case |
| ) | Number <u>12-11488</u> |
| EARL S. CHASTAGNER ) | |
| ) | |
| Debtor ) | |
| ) | |

### OPINION AND ORDER

Before the Court is an Amended Motion to Avoid the Lien of TitleMax of Georgia, Inc. ("Titlemax") filed by Earl S. Chastagner ("Debtor").[1] This is a core matter pursuant to 28 U.S.C. §157(b)(2) and the Court has jurisdiction pursuant to 28 U.S.C. §1334. Debtor seeks to avoid Titlemax's lien against his 2005 Dodge Ram 2500 truck ("the Truck") pursuant to 11 U.S.C. §522(f).[2] For the following reasons, I find that Titlemax has ownership rights in the Truck pursuant to O.C.G.A. §44-14-403(b)(3) rather than a lien subject to avoidance under 11 U.S.C. §522(f), and therefore, Debtor's motion is

---

[1] The order on the Motion to Avoid Lien was previously vacated because of lack of evidence of proper service of the initial motion. See Dckt. No. 18, p. 4 (initial motion); Dckt. No. 54 (order vacating); Fed. R. Bankr. P. 7004(b)(3); In re Tudor, 282 B.R. 546, 549-50 (Bankr. S.D. Ga. 2002).

[2] As this is a threshold issue, I have assumed for purposes of this opinion that the Truck qualifies as a "tool of the trade" under 11 U.S.C. §522(f).

denied.

### FINDINGS OF FACT

Prior to filing his petition, Debtor entered into an agreement with Titlemax in which he pledged the Truck in exchange for $4,934.82. The original maturity date was January 24, 2012. Debtor renewed this pawn transaction several times, with the final renewal agreement being entered on August 6, 2012 ("the agreement"). On the September 5, 2012 maturity date, one payment of $5,427.81 was due. The agreement provides:

> You hereby grant to us a security interest in your motor vehicle. In consideration of your payment of $5,427.81 (which is the cost to the seller or pledgor to redeem the merchandise in this period of the transaction), delivery to us of the motor vehicle's certificate of title, and agreement to pay all the fees, sums, interest, charges and amounts pursuant to O.C.G.A. §44-12-130 et seq. and disclosed herein, we agree to lend you $4,934.82. . . . [I]f you choose to redeem or repurchase the pledged goods, then you must pay us in cash the Total of Payments listed below on the specified maturity date of the pawn transaction, which is 09/05/2012.

Dckt. No. 42, Ex. A, p. 1. Pursuant to this language, Debtor had a right to redeem the Truck on the maturity date. The agreement further provides a second redemption period, during which additional interest might be charged and the goods are subject to repossession:

> The pledged goods may be redeemed for thirty days after the Specific Maturity Date or the

2

> extended maturity date . . . . You may redeem the motor vehicle within the grace period by the payment of any unpaid accrued fees and charges, the repayment of the principal, and the payment of an additional interest charge . . . [i]f the motor vehicle is not redeemed within the grace period it shall be automatically forfeited to us by operation of O.C.G.A. §44-14-403, and any of your ownership interest in the motor vehicle shall automatically be extinguished. After the grace period the pledged goods become the property of the pawn broker. . . . If you are in default, we have the right to take possession of the motor vehicle.

Dckt. No. 42, Ex. A, p. 2.

The agreement further states: "Security: You are giving a security interest in the motor vehicle" and "[W]e have a lien on the motor vehicle pawned for the money advanced, interest, and pawnshop charge owed but not for other debts due to us. We may retain possession of the pledged goods until the lien is satisfied and may have a right of action against anyone interfering therewith." Dckt. No. 42, Ex. A, pp. 1-2. In capital letters at the top of the agreement, the words "PAWN TRANSACTION" appear and on the center of the first page, it states "[t]his is a pawn transaction," and it "note[s] that we are not making any agreement requiring the personal liability of a Pledgor." Id.

Debtor filed his chapter 7 bankruptcy petition on August 20, 2012, before the maturity date. Debtor received a discharge on

3

January 7, 2013. Both parties acknowledge that Debtor was not in default under the agreement as of the petition date. Debtor has not sought to redeem the Truck, but rather seeks to avoid the lien of Titlemax to the extent it impairs his exemptions. The time to redeem the Truck expired post-petition.

## CONCLUSIONS OF LAW

Debtor seeks to avoid the lien of Titlemax pursuant 11 U.S.C. §522(f), which states in pertinent part:

> (f)(1) Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is-
>
> (B) a nonpossessory, nonpurchase-money security interest in any--
> .
> .
> .
> (ii) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor;

11 U.S.C. §522(f)(1)(B). Debtor argues that the language of the agreement evidences a security interest, and that because he was in possession of the Truck and the loan had not matured on the date of filing for bankruptcy, Titlemax has a lien that is subject to avoidance pursuant to 11 U.S.C. §522(f). Conversely, Titlemax argues because Debtor failed to exercise his redemption rights

4

within the redemption period, Georgia law affords Titlemax an automatic right to full ownership in the Truck and therefore Debtor may not utilize 11 U.S.C. §522(f) to avoid its lien. In support of its contention, Titlemax cites decisions holding that under 11 U.S.C. §108(b), ownership vests in the pawnbroker after the later of (1) the expiration of the statutory redemption period or (2) 60 days after filing of the petition. <u>In re Moore</u>, 448 B.R. 93, 102 (Bankr. N.D. Ga. 2011) ("when the redemption period with regard to the pawned vehicles expired, they automatically became the property of the Pawnbroker and were no longer property of the estate"). Section 108(b) provides:

> [i]f applicable nonbankruptcy law . . . or an agreement fixes a period within which the debtor. . . may file any pleading, demand, notice, or proof of claim or loss, cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only file, cure, or perform, as the case may be, before the later of . . . (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or . . . (2) 60 days after the order for relief.

11 U.S.C. §108(b).

Pursuant to the agreement, the nature and extent of Debtor and Titlemax's rights in the Truck must be determined under Georgia law respecting pawn transactions. See <u>Butner v. United States</u>, 440

5

⚜AO 72A
(Rev. 8/82)

U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). The agreement is labeled with the words "PAWN TRANSACTION" and states "[t]his is a pawn transaction," and it "note[s] that we are not making any agreement requiring the personal liability of a Pledgor." Dckt. No. 42, Ex. A, pp. 1-2. The agreement also states, "[Y]ou further acknowledge that we are a Pawnbroker and that you are engaging in a Pawn Transaction with us (the terms of which are contained herein) as allowed by O.C.G.A. §44-12-130 et seq." Dckt. No. 42, Ex. A, p. 4. Furthermore the agreement states it "shall be governed by the laws of the State of Georgia." Id. at 3. While Georgia state courts have had few opportunities to apply the pawnbroker's statute to car title loans, the bankruptcy courts of this state have described its application as follows:

> In a Georgia pawn transaction involving a motor vehicle, the title lender receives a statutory lien on the vehicle, and the lender's possession of the certificate of title is 'conclusively deemed to be [legal] possession of the motor vehicle' . . . After a thirty-day 'grace period,' the pledgor's ownership interest in the vehicle is automatically forfeited to the title lender, the ownership interest in the vehicle is automatically

6

> extinguished, and the title lender may dispose of the vehicle. <u>This provision for the automatic extinguishing of the pledgor's ownership rights eliminates the need for action on the part of the title lender to acquire title to the vehicle</u>.

<u>In re Oglesby</u>, 2001 WL 34047880, at *2 (Bankr. S.D. Ga. Oct. 23, 2001)(emphasis added)(<u>citing</u> O.C.G.A. §44-12-130(5) and §44-12-403(b)). "Although a pawn transaction traditionally requires a pawnbroker to have possession of the pledged property, Georgia law permits a borrower to pledge a motor vehicle by providing that the pawnbroker's possession of the vehicle's certificate of title is conclusively deemed to be possession of the vehicle." <u>In re Moore</u>, 448 B.R. at 97; <u>see also</u> <u>In re Bell</u>, 279 B.R. 890, 895-96 (Bankr. N.D. Ga. 2002)(stating, "although a pledge traditionally requires the creditor to have possession of the pledged property, the [Georgia] statutes permit a borrower to pledge a motor vehicle by providing that the pawnbroker's possession of the vehicle's certificate of title is conclusively deemed to be possession of the vehicle").

Unlike the typical secured transaction, where a lender must take affirmative steps in order to obtain title, in Georgia a pawnbroker's rights accrue automatically by operation of law. O.C.G.A. §44-14-403(b). The agreement at issue in this case specifically incorporates O.C.G.A. §§44-12-130 et seq. and 44-14-

7

403(b) and tracks its language. O.C.G.A. §44-14-403(b)(3) provides: "Pledged goods not redeemed within the grace period shall be automatically forfeited to the pawnbroker by operation of this Code section, and any ownership interest of the pledgor or seller shall automatically be extinguished as regards the pledged item." O.C.G.A. §44-14-403(b)(3). Section 108(b) extends this time up to 60 days following the petition date. Debtor failed to redeem within this time period, therefore title to the Truck was automatically forfeited to Titlemax.

A right to redeem, such as Debtor retained in this case, has been likened to an option to purchase. In re Moore, 448 B.R. at 100, n. 10 ("The rights of the borrower in a pawn transaction are analogous, if not identical, to the rights of a party with an option to purchase property."). The lender and the pledgor in a pawn transaction occupy positions similar to an optionor and an optionee in an option contract. Id. Like an optionee, under O.C.G.A. §44-14-403(b)(3), a pledgor must pay the redemption price before the grace period expires in order to prevent all rights in the pledged goods from reverting to the lender. O.C.G.A. §44-14-403(b)(3). Similarly, "time is of the essence" for an optionee as much as it is for a pledgor, because "unless exercised, an option expires on the specified date." In re Intermet Realty P'ship, 26 B.R. 383, 388

8

(Bankr. E.D. Pa. 1983). Just as the pledgor has no binding, personal obligation to repay the lender in a pawn transaction, "[t]he distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option." Suburban Imp. Co. v. Scott Lumber Co., 59 F.2d 711, 715 (4th Cir. 1932).

Accordingly, in the case sub judice, the rights of Titlemax "are different from the rights that the holder of a security interest or other lien has in encumbered property to secure a debt," and they receive different treatment under the Bankruptcy Code. In re Moore, 448 B.R. at 100. Section 108(b) of the Bankruptcy Code protects the bankruptcy estate from the automatic operation of state law, as for redemption periods by extending the time to redeem. In re Oglesby, 2001 WL 34047880, at *3 (adopting the "prevailing view . . . that because the more specific provisions of . . . §108(b) should control and that to enlarge property rights by allowing §362 to prevail over §108(b) would render the §108 time allotments unnecessary.").

Georgia law provides that all pawn transactions shall mature in 30 days unless extended, and that subsequently, a 30 day, post-maturity redemption period runs during which additional interest may be charged. O.C.G.A. §44-12-131(a)(1) ("All pawn

9

transactions shall be for 30 day periods but may be extended or continued for additional 30 day periods"); O.C.G.A. §44-14-403(b)(1) ("There shall be a grace period on all pawn transactions. On pawn transactions involving motor vehicles or motor vehicle certificates of title, the grace period shall be 30 calendar days."). During these two successive redemption periods, Titlemax had a statutory lien against the Truck "for the money advanced, interest, and pawnshop charge owed" under O.C.G.A. §44-14-403(a). However, it also had a right to obtain automatic, full ownership in the Truck upon Debtor's failure to pay the redemption price. As stated in Moore:

> The fact that the [debtors] had possession of the vehicles, and that they were property of the estate, at the time of filing does not enlarge their rights or diminish the Pawnbroker's with regard to automatic forfeiture or extinguishment of the [debtors'] ownership rights. The extent to which property is property of the estate is limited by any conditions on the debtor's rights under applicable nonbankruptcy law unless the Bankruptcy Code provides otherwise. As discussed below, 11 U.S.C. §108(b) extends the time during which a Chapter 13 debtor may exercise rights to redeem pawned property, but it does not eliminate forfeiture and extinguishment if redemption does not occur.

In re Moore, 448 B.R. at 101. "[A]lthough section 108(b) obviously allows the trustee in bankruptcy a sixty-day grace period unavailable to the prepetition debtor, it just as plainly bespeaks

10

a legislative intent to cut off the extension period, either at 60 days from the filing of the chapter 7 petition or upon the expiration of any remaining prepetition period, whichever occurs later." In re Ludlow Hosp. Soc., Inc., 124 F.3d 22, 30 (1st Cir. 1997).

Because Debtor did not redeem the Truck within the time allowed under 11 U.S.C. §108, title to the Truck vested in Titlemax. Section 522(f) cannot be utilized by Debtor as it only avoids "the fixing of lien of the interest of a debtor in property" . . . if the lien is a nonpossessory, nonpurchase money lien. 11 U.S.C. §522(f)(1)(B). While Debtor filed his motion to avoid the lien on September 19, 2012, which is before the redemption period expired, the filing of the motion does not toll the redemption period. The redemption period has expired. Furthermore, it is doubtful that section 522(f) can be utilized to avoid the lien. See 4 Collier On Bankruptcy ¶522.11[6][a] (16th ed. 2009)(stating that section 522(f) does not apply to a pawn broker's possessory security interest). Because Debtor failed to redeem the Truck within the allotted time, Titlemax's lien has been automatically exchanged for fully vested ownership rights and therefore is not subject to avoidance under section 522(f).

11

For the foregoing reasons, it is hereby ORDERED that Debtor's Amended Motion to Avoid the Lien of Titlemax is DENIED.

_____
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia

this  8th  day of August, 2013.

AO 72A
(Rev. 8/82)